### United States District Court
### District of Connecticut

```
-----------------------------------x
                                   :
YALE UNIVERSITY,                   :
      Plaintiff,                   :
                                   :
and                                :
                                   :
THE NIGHT CAFÉ, a PAINTING         :
      Plaintiff-in-rem,            :
                                   :
v.                                 :   CIVIL NO. 3:09CV466(AWT)
                                   :
PIERRE KONOWALOFF,                 :
      Defendant,                   :
                                   :
v.                                 :
                                   :
YALE UNIVERSITY,                   :
      Counterclaim-defendant,      :
                                   :
and                                :
                                   :
THE NIGHT CAFÉ, a PAINTING         :
      Counterclaim-defendant-in-rem.:
                                   :
-----------------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIMS

Pierre Konowaloff ("Konowaloff") has brought counterclaims seeking injunctive and declaratory relief as well as replevin of, or money damages for the possession and retention by Yale University ("Yale") of, Vincent van Gogh's The Night Café (the "Painting"), which the Russian government expropriated in 1918 from Russian industrialist Ivan A. Morozov ("Morozov"), Konowaloff's great-grandfather. Yale has moved for summary judgment on Konowaloff's counterclaims. For the reasons set

forth below, Yale's motion for summary judgment is being
granted.

## I. Factual Background

The Night Café is a masterpiece painted by Vincent van Gogh
in 1888 and is one of the world's most renowned paintings. In
1918, Morozov possessed the Painting, which he kept in his home
in Moscow along with a large collection of other artworks by
Russian and European artists.

In 1917, the Bolshevik faction of the Russian Social
Democratic Workers party, led by Vladimir Lenin, seized power
and declared itself the new socialist government of Russia; it
would later be known as the Russian Soviet Federated Socialist
Republic ("RSFSR"). Although the United States of America broke
off formal diplomatic relations almost as soon as the new
socialist government came into power, the United States, like
other sovereigns, recognized the RSFSR as the de facto
government of Russia. On March 3, 1918, in the exercise of its
sovereignty, the RSFSR signed the Peace Treaty of Brest-Litovsk,
formally withdrawing from World War I, and establishing peace
between Russia and Germany and Germany's allies. In 1922, the
RSFSR joined with three other republics to form the Union of
Soviet Socialist Republics ("USSR" or "Soviet Union"). On
November 17, 1933, through the signing of the Roosevelt-Litvinov
Agreements, the United States formally recognized the Soviet

-2-

Union as Russia's government. Today, the United States also recognizes the Russian Federation.

Immediately after seizing power in 1917, the new socialist government had issued a decree abolishing private property and declaring confiscated property to belong to the "whole people," that is, the Soviet state. In December 1918, the RSFSR, by decree from the Council of People's Commissars, declared the art collection of three Russian citizens, Ivan A. Morozov, I.C. Ostruokhov, and V.I. Morozov, to be state property. The Soviet Union displayed The Night Café in the Museum of Modern Art in Moscow from 1928 until 1933, when it was sold abroad. Later that year, Stephen Clark ("Clark") acquired the Painting. Konowaloff disputes that the Painting was sold; he asserts that it was delivered to the Matthiesen Gallery by the Soviet trade delegation in Berlin for shipment to Knoedler & Company, an art gallery in New York, which transferred the Painting to Clark. Konowaloff contends that the sales of art by the Soviet government via the Bolshevik Center, a criminal network, to wealthy westerners such as Clark were cloaked in secrecy and employed an intricate laundering operation.

After Clark acquired the Painting, he loaned it to museums and galleries in the United States for public display until his death in 1960. In his will, Clark left numerous works of art, including The Night Café, to Yale. In June 1961, Yale received

the works of art from Clark's estate and formally accessioned the Painting into the Yale University Art Gallery's permanent collection.

In 2002, Konowaloff became the official heir to the estate of his great-grandfather. He later learned that Morozov had owned the Painting and that the Painting had been sold to Clark in the 1930s and subsequently bequeathed to Yale. In March 2008, Konowaloff, through his wife, wrote to Yale inquiring about Yale's ownership of the Painting. Yale filed the instant action to quiet title and for declaratory and injunctive relief against Konowaloff. Konowaloff filed counterclaims seeking injunctive and declaratory relief, as well as replevin of, or money damages for the possession and retention by Yale of, the Painting.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When ruling on a

motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id., 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

## III. Discussion

Yale argues that summary judgment should be granted in its favor on Konowaloff's counterclaims based on the act of state doctrine. The court agrees.

"The act of state doctrine . . . arises out of the basic relationships between branches of government in a system of separation of powers. It concerns the competency of dissimilar institutions to make and implement particular kinds of decisions

-6-

in the area of international relations." <u>Banco Nacional de Cuba</u>
<u>v. Sabbatino</u>, 376 U.S. 398, 423 (1963). As formulated in
decisions of the Supreme Court, the doctrine "expresses the
strong sense of the Judicial Branch that its engagement in the
task of passing on the validity of foreign acts of state may
hinder rather than further this country's pursuit of goals both
for itself and for the community of nations as a whole in the
international sphere." <u>Id.</u>

> Under the act of state doctrine, the courts of the
> United States, whether state or federal, <u>will not</u>
> <u>examine the validity of a taking of property within</u>
> <u>its own territory by a foreign sovereign government,</u>
> <u>extant and recognized by this country at the time of</u>
> <u>suit</u>, in the absence of a treaty or other unambiguous
> agreement regarding controlling legal principles....

<u>Konowaloff v. Metro. Museum of Art</u>, 702 F.3d 140, 145 (2d Cir.
2012) (quoting <u>Sabbatino</u>, 376 U.S. at 428) (emphasis in
<u>Konowaloff</u>). "[T]he validity of the foreign state's act may not
be examined" even when there is a claim that the taking of
property was in violation of "customary international law" or
"the foreign state's own laws." <u>Konowaloff</u>, 702 F.3d at 145-46.
Moreover, in <u>Oetjen v. Central Leather Co.</u>, the Court held that:

> [W]hen a government which originates in revolution or
> revolt is recognized by the political department of
> our government as the <u>de</u> <u>jure</u> government of the
> country in which it is established, <u>such recognition</u>
> <u>is retroactive in effect and validates all the actions</u>
> <u>and conduct of the government so recognized from the</u>
> <u>commencement of its existence</u>.

<u>Konowaloff</u>, 702 F.3d at 146 (quoting <u>Oetjen</u>, 246 U.S. 297, 302-03 (1918)) (emphasis in <u>Konowaloff</u>). "The Supreme Court has repeatedly applied this principle to cases involving nationalizations ordered during the Russian Revolution—appropriating the property and assets of various Russian corporations—notwithstanding the fact that formal recognition of the Soviet government by the United Sates occurred years after the decrees themselves." <u>Konowaloff</u>, 702 F.3d at 146 (citing <u>United States v. Pink</u>, 315 U.S. 203, 230-33 (1942); <u>United States v. Belmont</u>, 301 U.S. 324, 326, 330 (1937)).

All of Konowaloff's counterclaims arise from his claim to ownership of the Painting. (<u>See</u> Amend. Countercl., Doc. No. 35, ¶ 1 ("This is an action for a declaration of title as residing in Pierre Konowaloff as the heir to <u>The Night Café</u> . . . .").) To prevail on any of his counterclaims, Konowaloff must prove that he either has title or a superior possessory right to the Painting. <u>See</u> <u>Falker v. Samperi</u>, 190 Conn. 412, 420 (1983) (conversion claimant must prove ownership); <u>Fiorenti v. Cent. Emergency Physicians, PLLC</u>, 762 N.Y.S.2d 402, 403 (App. Div. 2003) (conversion claimant must prove ownership or superior right of possession); <u>Velsmid v. Nelson</u>, 175 Conn. 221, 229 (1978) (adjudication of title depends on the strength of plaintiff's own title); <u>M. Itzkowitz & Sons, Inc. v. Santorelli</u>, 128 Conn. 195, 198 (1941) ("The plaintiff in replevin must

prevail by the strength of his title rather than by the weakness of the defendant's."); Nissan Motor Acceptance Corp. v. Scialpi, 944 N.Y.S.2d 160, 162 (App. Div. 2012) ("A cause of action sounding in replevin must establish that the defendant is in possession of certain property of which the plaintiff claims to have a superior right."); Discover Leasing, Inc. v. Murphy, 33 Conn. App. 303, 309 (1993) (conversion and statutory theft require proof that property "belonged to" plaintiff). Thus, Konowaloff's ownership of or superior possessory right to the Painting is "an essential element of [his] case with respect to which [he] has the burden of proof at trial." Celotex Corp., 477 U.S. at 323. However, there is no genuine issue as to the fact that "The Night Café was taken by the new Soviet government of Russia by order of Lenin and Sovnarkom (the Council of People's Commissars) in December 1918," as part of the movement to nationalize private property. (Def. and Countercl. Pl. Pierre Konowaloff's Local Rule 56(a)(2) Statement, Doc. No. 80-1, ¶ 8.) For the court to determine whether Konowaloff has proven this "essential element" would necessarily require the court to make an inquiry into the legal validity of the 1918 nationalization decree. However, such inquiry is precluded by the act of state doctrine.

Konowaloff is directly on point. That action involved the possession and retention by the Metropolitan Museum of Art (the

-9-

"Met") of a Cézanne painting entitled <u>Madame Cézanne in the Conservatory</u>, which the RSFSR expropriated from Morozov under the same decree and at the same time it expropriated <u>The Night Café</u>. The court held:

> As Konowaloff has no right to or interest in the Painting other than as an heir of Morozov, and Morozov did not own the Painting after the 1918 Soviet appropriation, Konowaloff has no standing to complain of any sale or other treatment of the Painting after 1918, or to seek monetary or injunctive relief, or to seek a declaratory judgment with respect to the [Met's] right or title to the Painting.

<u>Konowaloff</u>, 702 F.3d at 147 (internal citation omitted).

The counterclaim plaintiff contends that <u>Konowaloff</u> is not on point because unlike <u>Konowaloff</u>, "[t]his case . . . has progressed beyond the pleading to the discovery stage and Yale's motion is for summary judgment[,]" and "[a]ccordingly, the applicability of the act of state doctrine necessarily involves factual questions requiring the taking of evidence, first and foremost the position of the Russian Federation regarding the irrelevance of the adjudication of the rights of the parties in this litigation to amicable relations between the United States and the Russian Federation." (Pierre Konowaloff's Opp'n to Yale Unversity's Renewed Mot. for Summ. J., Doc. No. 141, at 2.) However, in <u>Konowaloff</u>, the court noted that "the successor to the U.S.S.R. has not renounced the 1918 appropriations," 702 F.3d at 147, and the counterclaim plaintiff has not produced any

evidence that the successor to the U.S.S.R. has done so subsequent to the date of the opinion in Konowaloff even though he was given additional time by the court in which to obtain such evidence.

Konowaloff also contends that summary judgment cannot be granted in light of the results of the investigation by Alexei Alekseevich Melnikov, who submitted an affidavit (see Aff. of Phillip Brown, Doc. No. 150, Ex. A) concerning his examination of the findings of the Russian Federation National Archives relative to its investigation of the sale of the Painting in 1933. However, this evidence merely reflects that a factual dispute may exist as to the historical circumstances surrounding the sale of the Painting by the Soviet government. (See id., at 2 ("I . . . received [the Russian archival entities'] official responses to the effect that their respective archives do not contain any documents directly or indirectly related to the sale of Van Gogh's The Night Café painting."); Aff. of Alexei Alekseevich Melnikov, Doc. No. 148, ¶ 4 ("When considering the mechanics of such an examination, one must take into account that over 80 years have passed and it could be quite complicated to find, locate and get access to relevant documents, many of which may still be privileged and classified.").) Thus, Konowaloff's contention does not address whether there is a genuine issue of material fact because the act of state that

-11-

matters for purposes of whether Konowaloff can prove he has title or a superior possessory right to the Painting is the 1918 appropriation by the Soviet government, not the 1933 sale. This point was also addressed in Konowaloff. See 702 F.3d at 147 ("The relevant act of state revealed by the Amended Complaint occurred in 1918 when the Soviet government appropriated the Painting. Upon the appropriation, as the Amended Complaint alleged, 'Morozov was deprived of all his property rights and interests in the Painting . . . .'") (citation omitted).

Because "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," Anderson, 477 U.S. at 247, and the court finds that the act of state doctrine applies to bar Konowaloff's counterclaims, the motion for summary judgment is being granted.

## IV. Conclusion

Accordingly, the Motion for Summary Judgment on Counterclaims by Counterclaim Defendant Yale University (Doc. Nos. 78 and 134) is hereby GRANTED. The Clerk shall enter judgment in favor of counterclaim defendant Yale University on all of the counterclaims of Pierre Konowaloff.

It is so ordered.

Signed this 20th day of March 2014 at Hartford, Connecticut.

```
                           /s/
_____
        Alvin W. Thompson
United States District Judge
```